**Baldemar ARMENDARIZ, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 84SC64.**

Supreme Court of Colorado,
En Banc.

Jan. 13, 1986.

David F. Vela, State Public Defender, Michael J. Heher, Matthew L. Goldsmith,

Deputy State Public Defenders, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dolores S. Atencio, John Milton Hutchins, Asst. Attys. Gen., Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review *People v. Armendariz*, 684 P.2d 252 (Colo.App.1983), which affirmed the conviction of Baldemar Armendariz (defendant) for second-degree kidnapping, third-degree assault, and second-degree criminal trespass. We affirm in part and reverse in part. On certiorari we have limited our review to the defendant's conviction of second-degree kidnapping. We reverse the conviction for second-degree kidnapping and return the case to the court of appeals with directions to remand to the district court to vacate the defendant's conviction and sentence for second-degree kidnapping. In all other respects we affirm the defendant's convictions.

## I.

The defendant went to the home of his estranged wife, Roxanne Armendariz, at about 10:30 p.m. on November 28, 1980. He parked in front of her apartment for approximately two hours. When he saw another man kiss his wife on the front step and then leave the apartment, he broke into the apartment through a living-room window. He confronted his wife about the other man, became enraged and struck her, and took their four month old infant son, Baldemar Armendariz, Jr., and left the apartment. At about 9:00 a.m. the following morning, the defendant telephoned his wife to see how she was doing and to say that he wanted to return the baby to her. A meeting was arranged to return the child. A police officer accompanying the wife arrested the defendant at the agreed meeting place. Baldemar and Roxanne Armendariz were married but had been separated for several months at the time of the incident in issue. The defendant was under court order to provide child support for Baldemar, Jr., but no custody order was entered for the infant until February 10, 1981, more than two months after the incident occurred. In May of 1980, the wife obtained a temporary restraining order prohibiting the defendant from contacting her or her child from a previous marriage or from entering her apartment. The restraining order in no way prohibited the defendant from having contact with Baldemar, Jr.

The defendant was originally charged in Larimer County District Court with six counts and was convicted by a jury of second-degree kidnapping, third-degree criminal assault, and second-degree criminal trespass. He was sentenced to twenty months in the Larimer County Jail, four years of probation, and was ordered to make restitution in the amount of $1,217.13. The court of appeals affirmed the conviction.

## II.

The defendant claims that the evidence was insufficient as a matter of law to support his conviction on the charge of second-degree kidnapping. Section 18–3–302, 8 C.R.S. (1978), provides:

**Second degree kidnapping.** (1) Any person who knowingly, forcibly, or otherwise seizes and carries any person from one place to another, without his consent and without lawful justification, commits second degree kidnapping.

(2) Any person who takes, entices, or decoys away any child not his own under the age of eighteen years with intent to keep or conceal the child from his parent or guardian commits second degree kidnapping.

The defendant claims that Baldemar, Jr., at the age of four months, was unable to "consent" to be taken by the defendant under the provisions of the kidnapping statute. He asserts that the General Assembly intended that both natural parents retain the right to consent to the disposition of the child unless a custody order has been

entered by the court. The court of appeals stated:

> Where, as here, one parent has exclusive physical custody of the infant, and that physical custody, though not judicially ordered, is nonetheless not in violation of a court order or decree and is coupled with a support order, we hold that the legal right to physical custody is reposed in the custodial parent for the purpose of determining the application of the kidnapping statutes.

684 P.2d at 256. We disagree.

■ Lack of consent is a necessary element of second-degree kidnapping under section 18–3–302(1), and the prosecution must prove the absence of consent beyond a reasonable doubt. *See People v. Johnson*, 183 Colo. 219, 516 P.2d 116 (1973); *People v. Rutt*, 179 Colo. 180, 500 P.2d 362 (1972). The child allegedly kidnapped by Armendariz was four months old. Since the infant lacked the capacity to consent, consent must be given by those having legal custody of the child. At common law, the father of a child had superior or exclusive rights to custody of his minor children. *LaGrenade v. Gordon*, 46 N.C.App. 329, 264 S.E.2d 757 (1980). Under modern law in most states, both parents have an equal and joint right to the custody of their minor children. 2 *Child Custody & Visitation Law and Practice* § 10.01 (J. McCahey ed. 1985); *see also, e.g., Wells v. Wells*, 36 Ill.App.3d 488, 344 N.E.2d 37 (1976).

■ Section 19–1–103(19)(a), 8 C.R.S. (1978), provides that "[l]egal custody may be taken from a parent only by court action." It is undisputed in the present case that no court action had been taken which in any way limited the defendant's right to legal or physical custody of his son. Roxanne Armendariz had actual physical custody of the child, but the practical living arrangements of the family can in no way circumscribe the legal custody rights of biological parents under section 19–1–103(19)(a). In the absence of a court order granting legal or physical custody to the child's mother, the defendant shared an equal right to the custody of the child.

Under these circumstances, it was impossible for the prosecution to show that the defendant seized Baldemar, Jr. "without his consent" for purposes of the second-degree kidnapping statute.

Accordingly, we reverse the judgment of the court of appeals on the charge of second-degree kidnapping and return the case to the court of appeals with directions to remand to the district court to vacate the defendant's conviction and sentence for second-degree kidnapping. In all other respects we affirm the defendant's convictions and sentences and the judgment of the court of appeals.